NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SCOTT A. WHITE,**
*Appellant*

**v.**

**H.J. HEINZ COMPANY,**
*Appellee*

---

2015-1176

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,241.

---

Decided: February 19, 2016

---

KEITH JUDE GRADY, Polsinelli PC, St. Louis, MO, argued for appellant. Also represented by MARK THOMAS DEMING, Chicago, IL.

PETER BRANKO PEJIC, Greenblum & Bernstein, P.L.C., Reston, VA, argued for appellee. Also represented by ARNOLD TURK, MICHAEL J. FINK, JILL BROWNING.

---

Before LOURIE, MOORE, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge.*

Appellant Scott A. White appeals the decision of the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB" or "Board"), on inter partes reexamination, finding claims 1–19 of U.S. Patent No. 8,231,026 (the "'026 patent") unpatentable as anticipated or obvious. *See H.J. Heinz Co. v. White,* No. 2014-004561 (P.T.A.B. Aug. 28, 2014) (J.A. 2–9). For the reasons set forth below, this court affirms.

BACKGROUND

I. The '026 Patent

The '026 patent is entitled "Condiment Container" and relates to "a condiment container configured to be carried by a standard drink holder to enable condiments to be securely carried in place in a vehicle during travel." '026 patent col. 1 ll. 7–9.

Independent claim 1 is illustrative and recites:

> A condiment container for carrying various condiments, the condiment container comprising:
>
> a container formed with a continuous sidewall with varying heights and forming a predetermined shape closed on one end forming a bottom floor and open on an opposing end defining an open end forming a container portion for receiving a condiment, said container portion formed with a form factor that enables said container to be received in a standard vehicle drink holder by way of a shoulder portion, said bottom floor formed to provide a deep end of said condiment container and a shallow end of said condiment container;

said shoulder portion comprising one or more extending shoulders extending outwardly from said continuous sidewall adjacent said open end configured to vertically support said container portion in said standard vehicle drink holder; and

a cover for covering said open end of said container portion, the cover attached to the open end of said container by an adhesive, the cover is peelable from the deep end of the container, the *cover is totally removable* from the deep end of the container to access the deep end of the container, and the *cover is removable* from the shallow end of the container to squirt the condiment from the shallow end of the container.

*Id.* col. 5 ll. 25–49 (emphases added). Independent claims 14 and 18 are similar to independent claim 1, but do not recite limitations relating to the shape and configuration of the container. *See id.* col. 5 ll. 19–33, 43–59.

## II. The Prior Art: Selker

U.S. Patent Application No. 2001/0045374 ("Selker") "discloses a single-use sealed package assembly for food products and medicines with dual distinct functions of containing a substance, and dispensing and applying it evenly, neatly, and sanitarily using a handle." Selker ¶ 9. Figure 1 depicts "a view of the filled and hermetically sealed package," *id.* ¶ 12, and Figure 2 depicts "a top view of the unsealed container," *id.* ¶ 13.



*Id.* figs.1, 2. This sealed container is formed "when the base 102 is sealed with the lid 104 using a conventional adhesive 112 deposited on the flange 110. During assembly, the adhesive 112 is applied to either the exterior circumferential flange 110 or the lid 104." *Id.* ¶ 18.

### III. Proceedings

In 2012, Appellee H.J. Heinz Company ("Heinz") requested an inter partes reexamination of claims 1–19 of the '026 patent.[1] In its reexamination request, Heinz asserted: (1) claims 14–18 were unpatentable as anticipated by the teachings of Selker; (2) claims 1–5, 8–13, and 19 were unpatentable as obvious in view of the combined teachings of Selker and U.S. Patent Application No. 2005/0161471 ("Grenda"); and (3) claims 6–7 were unpatentable as obvious in view of the combined teachings of either (i) Selker, Grenda, and U.S. Patent No. 5,429,262 ("Sharkey") or (ii) Selker, Grenda, and U.S. Patent No. 6,076,700 ("Manges").

---

[1] Mr. White and Heinz are also involved in an infringement action in the U.S. District Court for the Northern District of Illinois regarding the '026 patent. *White v. H.J. Heinz Co.*, No. 12-cv-06074 (N.D. Ill. filed Aug. 1, 2012). That case is currently stayed pending final decision in this proceeding.

In June 2013, the Examiner issued a Right of Appeal Notice following her Action Closing Prosecution, which held claims 1–22 of the '026 patent unpatentable as anticipated or obvious.[2]  *See* J.A. 687–95 (Action Closing Prosecution).  Mr. White appealed the Examiner's findings to the PTAB.  J.A. 750.  The PTAB affirmed the Examiner's rejection of claims 14–18 under 35 U.S.C. § 102(b) (2006) and claims 1–13, and 19 under 35 U.S.C. § 103(a).  Mr. White timely appealed.  This court has jurisdiction to review the PTAB's Final Decision under 28 U.S.C. § 1295(a)(4)(A) (2012).

DISCUSSION

I. Anticipation

A. Standard of Review and Legal Standard for Anticipation

"[A]nticipation is a question of fact, including whether an element is inherent in the prior art," *In re Gleave*, 560 F.3d 1331, 1334–35 (Fed. Cir. 2009) (citation omitted), and is reviewed for substantial evidence, *In re Rambus Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012).  "A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding."  *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1364 (Fed. Cir. 2014) (citation omitted).  "If the evidence in [the] record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative."  *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

---

[2]   In January 2013, Mr. White added claims 20–22 by amendment.  During the reexamination, the Examiner found these claims unpatentable.  In September 2013, Mr. White canceled claims 20–22 by amendment.

A reference is anticipatory under 35 U.S.C. § 102(b)[3] if "the prior art reference . . . disclose[s] each and every feature of the claimed invention, either explicitly or inherently." *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006) (citation omitted). "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation . . . ." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (citing *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268–69 (Fed. Cir. 1991)). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Cont'l Can Co.*, 948 F.2d at 1269 (internal quotation marks and citations omitted).

B. The PTAB Did Not Err in Its Finding of Anticipation for Claims 14–18

Mr. White argues Selker does not anticipate the removable cover limitation of independent claim 14 or dependent claims 15–18 because "Selker would have necessarily included a stop that would prevent total removal of the cover." Appellant's Br. 18. Mr. White argues: (1) the PTAB erred in finding Selker does not disclose an inherent stop limitation preventing complete removal of the container cover, *id.* at 24–32, and (2) the PTAB erred in its applying the law of inherent anticipation, *id.* at 23, 26. We address these arguments below.

<hr>

[3]    In passing the Leahy-Smith America Invents Act ("AIA"), Congress amended § 102. *See* Pub. L. No. 112-29, § 3(b), 125 Stat. 284, 285–87 (2011). However, because the application that led to the '026 patent was filed before March 16, 2013, the pre-AIA § 102(b) applies. *See id.* § 3(n)(1), 125 Stat. at 293.

1. Substantial Evidence Supports the PTAB's Determination that Selker Does Not Inherently Disclose a Stop

The PTAB affirmed the Examiner's finding that "in Selker, [t]here is not any structure disclosed that prevents the cover from being peeled beyond the handle portion and that the *user* stops the cover at the desired location." J.A. 5 (internal quotation marks and citation omitted). The PTAB determined "a preponderance of the evidence support[ed] the finding that Selker does not disclose any kind of stop. Selker neither depicts in any drawing, nor describes in any textual disclosure, structure that might prevent the cover from being removed from both ends of Selker's package." J.A. 5. The PTAB further stated "[i]n fact . . . , Selker *specifically discloses* reliance upon the user to refrain from peeling the cover back from either end of the package any more than necessary to make the condiment available for use as the user desires." J.A. 5–6 (emphasis added).

Mr. White argues the PTAB erred in finding that Selker does not inherently disclose a structural stop. Appellant's Br. 28. Mr. White contends "the Selker container necessarily has a stopping point [between the bowl and the knife] that prevents the cover from being totally removable." *Id.* at 13. Mr. White notes that he provided "expert testimony [that] conclusively establishe[d] that Selker necessarily included a stop, or that it otherwise would not function as intended." *Id.* at 28. In support of this argument, Mr. White relies on analysis from his expert, Thomas J. Dunn. Specifically, Mr. White reproduced Mr. Dunn's annotated versions of Figures 3 and 4 from Selker, where arrows were added to "demonstrate the presence of the [alleged] stopping point." *Id.* at 29; *see also* J.A. 253 (Mr. Dunn's expert declaration). Mr. Dunn calculated that "Selker intends that eight-fifteenths (57%) of the lid remain[s] attached to the base for either use." J.A. 253 ¶ 27. The image, as presented in Mr. White's appeal brief, is provided below.



Appellant's Br. 29 (reproducing Figures 3 and 4 from Selker, with arrows added).

Mr. White's amalgamation of these figures and analysis is misplaced. We have consistently found "patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000); *see also In re Wright*, 569 F.2d 1124, 1127 (CCPA 1977) ("Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value." (citation omitted)).

Mr. White further argues that "a physical stop or lock-up seal [i.e., adhesive] is necessarily present because Selker would otherwise be susceptible to over-peeling that would render it inoperable." Appellant's Br. 30. Without a stop, Mr. White contends, Selker would not work for its intended purpose. *Id.* at 14 ("A stop . . . is fundamental to Selker's operation."). As such, a person having ordinary skill in the art ("PHOSITA") would know a consumer would be prone to over peeling the lid from the container and would have "turned to well-known adhesives that

form 'easy-peel' sealants at one temperature and 'lock-up' seals that provide a stop at higher temperatures." *Id.* at 31. Mr. White contends "the absence of extensive discussion about the stop is of no moment given that the implementing technology—such as heat-sealed bumps or 'lock up' seals—was well-known and regularly used in the art." *Id.* at 15. Based on this, Mr. White concludes that Selker "necessarily discloses a stop that would prevent its lid from being totally removable." *Id.* at 32.

Both Mr. White and Heinz submitted declarations detailing their respective positions on why a stop was or was not present in Selker. *See generally* J.A. 249–58 (Mr. Dunn's expert declaration on behalf of Mr. White), 481–87 (Brian Wagner's expert declaration on behalf of Heinz). These experts opined on what a PHOSITA would infer from Selker regarding what a "conventional adhesive" was. *See* Selker ¶ 18 ("lid 104 using a conventional adhesive 112"). Mr. White's expert, Mr. Dunn, contends such a person would infer the use of an adhesive that would create a permanent stop in the middle of the packaging. *See* J.A. 253 ¶ 29 ("Packaging material options are known for specifying 'easy-peel' sealants on lidding that provide [sic] can also deliver 'lock-up' seals. . . . It necessitates that lid material with the uniform sealant layer experience higher sealing temperatures in the one fifteenth of the lid length intended to provide a 'stop peel' function than used in the 'peel' areas."). Heinz's expert, Mr. Wagner, contends such a person would infer the use of a single adhesive, which would not create a permanent stop. *See* J.A. 486 ¶ 25 ("Given that [Selker] discloses the use of only one adhesive to the exterior circumferential flange 110 or the lid 104, one of ordinary skill in the art would understand that the adhesive would behave in the same way throughout and, thus, the lid 104 could be capable of being detached or removed from all sections of the container 102."). While the Examiner and the PTAB did not explicitly cite these expert reports, it is evident the Exam-

iner and the PTAB weighed these arguments and accorded more weight to Heinz's expert.

Substantial evidence supports the PTAB's determination that Selker does not disclose a structural stop limitation. As described above, Selker's figures and express textual teachings and expert declarations provided the Examiner and the PTAB with substantial evidence to reach its determination. Based on the record during reexamination, the Examiner concluded, and the PTAB agreed, that there was "not any structure disclosed that prevents the cover from being peeled beyond the handle portion. *The Selker disclosure states that the user stops the cover at a desired location.*" J.A. 703 (emphasis added) (Examiner's Action Closing Prosecution); *see* J.A. 5–6.

Finally, Mr. White agues the PTAB erred in finding the cover of Selker to be completely removable based on its finding that Selker did not disclose any structural stop limitations. Appellant's Br. 23. He contends "substantial evidence does not support finding Selker discloses a totally removable cover." *Id.* at 26 (capitalization omitted). Mr. White cites Figures 2 and 5 of Selker to argue the "figures do not disclose the total removal of a cover from a once-sealed container. Rather, they explicitly disclose 'an *unsealed* container,' *i.e.*, a container to which a cover has not been applied." *Id.* at 24 (quoting Selker ¶¶ 13, 16). Figure 2 discloses "a top view of the unsealed container," Selker ¶ 13, and Figure 5 discloses "a top view of the unsealed container showing a serrated edge along the handle," *id.* ¶ 16. Mr. White argues that Selker knew how to describe a cover that had been removed, as in Figures 3 and 4, because it explicitly said so.

As demonstrated above, substantial evidence supports the PTAB's finding that Selker anticipates claims 14–18 of the '026 patent. The PTAB relied on its determination that Selker did not disclose a structural limitation and found this "allow[ed] for complete removability of the

cover from the container." J.A. 6. While Mr. White argues a PHOSITA would understand Selker differently, the PTAB's decision to find anticipation of the '026 patent is supported by substantial evidence. *See Jolley*, 308 F.3d at 1320 ("[T]he possibility of drawing two inconsistent conclusions from the evidence will not render the Board's findings unsupported by substantial evidence." (internal quotation marks and citation omitted)). Accordingly, the PTAB did not err in its determinations.

### 2. The PTAB Did Not Err in Its Inherent Anticipation Analysis

Mr. White next argues that, even if the PTAB correctly found that Selker does not inherently disclose a stop, the PTAB committed legal error when it asked him "to demonstrate Selker inherently disclosed the absence of the totally removable limitation." Appellant's Br. 26. Mr. White contends that in order for Selker to anticipate the '026 patent claim limitation of "totally removable," it "must have 'necessarily' disclosed a totally removable cover." *Id.* (quoting *In re Montgomery,* 677 F.3d 1375, 1380 (Fed. Cir. 2012)). He explains "[i]t is not enough that Selker likely or probably discloses a totally removable cover . . . ." *Id.* (citation omitted). Mr. White also contends the PTAB "improperly shift[ed] the burden of demonstrating inherency" because "it was the Examiner's and the Board's responsibility to show the limitation *was* necessarily present." *Id.* at 23 (citation omitted).

Mr. White's argument is contrary to the PTAB's findings. Here, the PTAB determined that "Selker neither depicts in any drawing, nor describes in any textual disclosure, structure that might prevent the cover from being removed from both ends of Selker's package." J.A. 5. Rather, the PTAB determined that Selker expressly "disclose[d] reliance upon the user to refrain from peeling the cover back from either end of the package any more than necessary." J.A. 5–6.

The PTAB did not err in its analysis of inherent anticipation. Inherent anticipation requires that the "prior art . . . necessarily include the unstated limitation." *Transclean Corp.*, 290 F.3d at 1373 (citing *Cont'l Can Co.*, 948 F.2d at 1268–69). Here, the PTAB found Selker did not disclose a stop, which was supported by express disclosures in Selker that cautioned the *user* to "refrain from peeling the cover back . . . any more than necessary." J.A. 6. Under substantial evidence review, there is sufficient evidence to support the PTAB's factual determination with respect to inherent anticipation. *See Rambus*, 694 F.3d at 46 ("Anticipation is a question of fact and we uphold the Board's factual determinations unless they are not supported by substantial evidence." (citation omitted)).

## II. OBVIOUSNESS

### A. Standard of Review and Legal Standard for Obviousness

A patent claim is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a [PHOSITA] to which said subject matter pertains." 35 U.S.C. § 103(a);[4] *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007) (discussing obviousness). Obviousness is a question of law that is reviewed de novo, based on underlying findings of fact reviewed for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). These underlying factual inquires include: (1)

---

[4] In passing the AIA, Congress amended § 103. *See* Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287–88. However, because the application that led to the '026 patent was filed before March 16, 2013, the pre-AIA § 103 applies. *See id.* § 3(n)(1), 125 Stat. at 293.

"the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and the presence of (4) secondary considerations of nonobviousness such "as commercial success, long-felt but unsolved needs, [and] failure of others." *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966), *cited with approval in KSR*, 550 U.S. at 399. Evidence of copying is also considered when evaluating secondary considerations of nonobviousness. *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

"The objective evidence of nonobviousness . . . may in a given case be entitled to more weight or less, depending on its nature and its relationship to the merits of the invention." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983). Additionally, any "commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (citation omitted).

### B. PTAB Did Not Err in Its Obviousness Determination for Claims 1–13 and 19

Mr. White argues the PTAB's finding of obviousness is based on its erroneous determination that Selker does not teach a structural limitation. He contends the PTAB did "not rely on Grenda, Sharkey, and Manges to teach a 'totally removable cover' for a dual-function container as claimed in the '026 patent because it erroneously understood Selker to teach that limitation." Appellant's Br. 32 (citation omitted). As such, Mr. White contends the PTAB's "determination that claims 1–13 and 19 are obvious based on Selker in view of Grenda, Sharkey, or Manges is unsupported and should be reversed." *Id.*

These arguments are raised in one paragraph of Mr. White's appeal brief and they rely on his previous argu-

ment that the PTAB erred in its determination of what Selker teaches. The arguments—underdeveloped in any event—need not be addressed because we affirm the PTAB's findings regarding Selker. Mr. White does not otherwise develop his nonobviousness argument, instead relying entirely on secondary considerations.

As the PTAB explained, Mr. White relied "on secondary consideration evidence [that] addresses what has already been determined to be taught by Selker, so the evidence relating to the nonobviousness of those features, as opposed to the entirety of what is claimed in claim 1, [is] inapt." J.A. 7. On appeal, Mr. White fails to present any developed arguments explaining how the asserted secondary considerations address elements of the invention other than those taught by Selker. On this record, we cannot say the PTAB erred in its determination that Mr. White's secondary considerations failed to establish nonobviousness.

CONCLUSION

We have considered Mr. White's remaining arguments and find them unpersuasive. Accordingly, the decision of the United States Patent and Trademark Office's Patent Trial and Appeal Board is

**AFFIRMED**