**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 5 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WESTLAKE SERVICES, LLC, | No. 18-55139 |
| Plaintiff-Appellant, | D.C. No. 15-cv-07490-SJO |
| v. | |
| CREDIT ACCEPTANCE CORPORATION, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted August 16, 2019
Submission Vacated September 18, 2019
Resubmitted February 3, 2020
Pasadena, California

Before: CALLAHAN and CHRISTEN, Circuit Judges, and CHEN,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward M. Chen, United States District Judge for the
Northern District of California, sitting by designation.

Credit Acceptance Corporation (CAC) and Westlake Services compete to provide car dealers with services for indirectly financing used car sales. Westlake sued CAC, asserting it violated Section 2 of the Sherman Act by attempting to enforce an invalid patent related to expediting the financing and sales process.

**BACKGROUND**

In January 2000, CAC began developing the Credit Approval Processing System (CAPS). CAPS makes the financing process for car dealers more efficient. Starting in August 2000, CAC ran a pilot program of CAPS with five dealers. In September 2000, CAC held a demonstration of CAPS for its dealers; it included a panel discussion and sought to advertise CAPS for future use. On or around January 9, 2001, the first of CAC's dealers began paying a licensing fee to use CAPS, and it thereon became available to all CAC's dealers.

CAC filed a patent application in December 2001. The patent was issued on September 27, 2005. CAC filed maintenance fees to keep it active in 2009, 2013, and 2017.

In 2013, CAC sued Westlake, alleging Westlake infringed the patent. The patent was ruled invalid due to patent-ineligible subject matter. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1048, 1057 (Fed. Cir. 2017). During the course of that litigation, Westlake learned that CAC's pre-2001 uses of CAPS (*i.e.*, the pilot program and dealer demonstration) were not disclosed to the

2

PTO. Westlake contends these uses would have invalidated the patent under the public-use bar.

Westlake filed this action against CAC in 2015, alleging CAC's 2013 suit to enforce its invalid patent violated the Sherman Act. CAC defended on the grounds of *Noerr-Pennington* immunity, which protects the First Amendment right to petition the government, a right which includes the filing of lawsuits. *See E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *see also United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Westlake alleged two claims to overcome that immunity: (1) a *Walker Process* claim; and (2) a sham litigation claim. Both stem from CAC's failure to disclose prior public use. Westlake's *Walker Process* claim alleges CAC fraudulently obtained its patent by intentionally failing to disclose its prior disqualifying sales and public uses to the PTO. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176–77 (1965). The sham litigation claim alleges CAC's infringement lawsuit against Westlake was objectively baseless and in bad faith because CAC knew the patent was invalid. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).

The district court granted CAC's motion for summary judgment, denied Westlake's cross-motion, and dismissed the suit. Westlake appeals. We review Westlake's appeal *de novo*. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

## JURISDICTION

We must first determine whether 28 U.S.C. § 1295(a)(1) vests exclusive jurisdiction over this case in the Federal Circuit.[1] Exclusive appellate jurisdiction vests in the Federal Circuit when: (1) federal patent law creates the cause of action; or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988); *cf. Gunn v. Minton*, 568 U.S. 251, 258 (2013) (district court has exclusive federal jurisdiction under § 1338 when a substantial question of federal law is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress"). The precise contours of the Federal Circuit's exclusive jurisdiction and the impact, if any, of *Gunn* on the scope of that jurisdiction is unsettled. *Compare Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1078 (Fed. Cir. 2018) (patent issue in a "case within a case" is not sufficient to raise a substantial issue of patent law over which Federal Circuit has exclusive appellate jurisdiction under *Gunn*) *with Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 442 (5th Cir. 2019) ("The four-factor test applied in *Gunn* . . . is not a

---

[1] The parties agree this Court has jurisdiction under 28 U.S.C. § 1291, but the Court considers its own jurisdiction *sua sponte*. *See Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009).

tool for the task of sorting cases between the circuits."), *cert. denied*, 140 S. Ct. 110 (2019).

Regardless of whether *Gunn* expands the jurisdiction of regional circuit courts over matters involving patents, we have jurisdiction over this appeal. Westlake's right to relief does not depend on resolution of a "substantial question of federal patent law" under *Christianson*. The at-issue patent has already been declared invalid, and the claim of invalidity based on the public-use bar involves no doctrinal dispute but instead turns on a fact-intensive analysis particular to this case. Thus, the memorandum disposition herein will have no practical effect on the patent at issue nor will it impact the development of federal patent law. *See Christianson*, 486 U.S. at 811–13. We thus address the merits of the appeal.

## DISCUSSION

Under *Noerr-Pennington*, Westlake cannot sue CAC under the Sherman Act based on CAC's 2013 patent suit unless it proves CAC obtained its patent by fraudulent omission or that CAC's 2013 infringement lawsuit was objectively baseless and in bad faith. *See Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1044–45 (9th Cir. 2009).

To successfully assert such a *Walker Process* claim, Westlake must produce: (1) independent and clear evidence of deceptive intent; and (2) a clear showing that the patent would not have issued but for the omission. *See Nobelpharma AB v.*

5

*Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998). Westlake contends CAC engaged in public use of CAPS when it rolled out an earlier version in the pilot program and conducted the dealer demonstration. Westlake must prove by clear and convincing evidence that either the pilot program or dealer demonstration was a public use, and this evidence must overcome any rebuttal evidence of experimental use. *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005).

Westlake failed to carry its burden. As to the pilot program, Westlake does not dispute that no dealers paid a license fee for CAPS during this short program; nor is it disputed that CAC made changes to CAPS based on feedback it solicited from the five (out of eleven) participating dealers. Westlake fails to satisfy the factors used to evaluate the experimental-use exception to the public-use bar. *See EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1357 (Fed. Cir. 2002). With respect to the dealer demonstrations, Westlake failed to present any evidence that CAC disclosed all claim limitations during these meetings. *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002) ("Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention . . . .").

Westlake's citation to CAC's 2001 newsletter, which informed shareholders that it began a "gradual roll-out" of CAPS in December 2000, does not create a

6

triable issue of fact. There is no evidence of any activity in December 2000 that would constitute prior public use. Indeed, in its 2002 Form 10-K filing with the SEC, CAC said "CAPS was installed on a pilot basis in August 2000 and was offered to all dealer-partners located in the United States beginning in January 2001." This statement is consistent with the undisputed facts.

As to the sham exception to *Noerr-Pennington* immunity, Westlake must prove by clear and convincing evidence, *see Kaiser*, 552 F.3d at 1044, that: (1) the lawsuit was objectively baseless; and (2) CAC had the subjective motivation to conceal an attempt to interfere directly with a competitor's business relationships. *Prof'l Real Estate*, 508 U.S. at 60–61. For the reasons stated above, Westlake fails to prove the patent suit was objectively baseless for the same reasons Westlake cannot establish a *Walker Process* claim.

The district court's grant of summary judgment is **AFFIRMED.**